**RICHTER'S JEWELRY CO., Inc. v. TAX ASSESSOR, et al.**
No. 67-18630.

Circuit Court, Dade County.

October 16, 1968.

Paul A. Louis, Bertha Claire Lee, Paul Siegel and Fay L. Becker of Sinclair, Louis & Huttoe, Miami, for plaintiff.

Thomas C. Britton, County Attorney, Gerald T. Wetherington, Assistant County Attorney, for defendants.

GENE WILLIAMS, Circuit Judge.

This cause came on to be heard upon the motions to dismiss and for summary judgment of defendant Dade County and other defendants, and plaintiff's motion for partial summary judgment. The court has carefully considered the pleadings, exhibits, affidavits, depositions and memoranda of law, and the argument of counsel in at least three lengthy hearings.

The genesis of this case was a thirteen page sworn complaint in eight counts filed on December 1, 1967, by Richter's Jewelry Co. (hereinafter "Richter" or "plaintiff") against Dade County and others seeking relief from an invalid tax based on an evaluation of $1,015,000 alleging, inter alia —

> Prior to 1 April 1967, plaintiff filed its tangible personal property tax return with the tax assessor, but said return is missing from the tax assessor's files; in January of 1967 a deputy tax assessor visited plaintiff's premises and valued its inventory and equipment at $338,000; said $338,000 is the just valuation of Richter's personal property; during April of 1967, another deputy tax assessor for purposes of rechecking said valuation, visited Richter's three times, stating on the first visit that the valuation would be raised from $338,000 to $450,000. Plaintiff compromised to avoid expensive litigation and reluctantly agreed to $450,000 on the third visit; said tax assessor represented that said valuation would be $450,000 and plaintiff believed said representation; in reliance upon the "willfully and fraudulently false statement as to the $450,000 valuation," Richter did not check the tax rolls or go before the board of equalization; it was not until after Richter received its tax bill (after the board of equalization had adjourned sine die) that Richter knew for the first time that the valuation had been increased to $1,015,000; Dade County failed to give Richter any notice whatsoever of this drastic increase and deprived plaintiff of due process; that the valuation was arbitrarily and capriciously arrived at simply by tripling the initial 1967 valuation; the valuation of $1,015,000 is without basis, unrealistic and untrue; the tax is fraudulent and excessive.

On 27 December 1967, Richter filed its amendment to complaint, the allegations of which are not pertinent here.

On 15 December 1967, Dade County filed its motion to dismiss (and motion to strike with which we are not here concerned) for

failure to state a cause of action for equitable relief on the basis —
(a) failure to exhaust administrative remedies, and (b) the tax roll is a public record and plaintiff is charged with knowledge thereof. On 3 January 1968, Dade County renewed its motion to dismiss setting forth additional grounds addressed to plaintiff's amendment to complaint (none of which are relevant here) and attached as exhibits the resolution of the board of county commissioners certifying the 1967 tax roll and certain minutes of said board.

On 8 January 1968, Richter filed its motion for partial summary judgment seeking adjudication that Richter's personal property tax assessment is invalid.

On 14 February 1968, Dade County filed its motion for summary judgment, supported by the affidavit of A. H. Blake, assistant tax assessor, stating that the plaintiff had not filed its 1967 personal property tax return, had made no request for review nor protest of its 1967 tax assessment, and had filed no petition or appearance before the board of equalization to protest said assessment, and the affidavit of Edward D. Phelan, deputy clerk of the board of county commissioners, setting forth the publication of notices that the preliminary tax rolls were available for inspection.

On 22 March 1968, Daniel Richter, on behalf of plaintiff, filed an affidavit in opposition to defendant's motion for summary judgment, stating —

> The allegations of the sworn complaint were true; he had caused to be mailed personal property tax returns for 1966 and 1967; Deputy Tax Assessor Charles Carlyle had visited plaintiff's premises three times between 1 April 1967 and 19 April, 1967; on his first visit Carlyle stated that the valuation would be raised from $338,000 to $450,000; plaintiff vehemently protested; between the second and third visit, plaintiff conferred with its accountant who advised the acceptance of the $450,000 valuation as more economically expedient than a lawsuit; $450,000 was the only figure insisted on by Carlyle; at no time did Carlyle atempt to examine any of the personal property nor did he ask to see any books or records. When asked for the 1966 income tax returns, Richter advised Carlyle that the 1966 income tax return had not been prepared as yet and that his accountant, Mr. Nefus, was ill. Carlyle stated that the tax would be based on a $450,000 valuation and plaintiff relied thereon; after the board of equalization had adjourned, plaintiff received its tax bill based on a value of $1,015,000; prior thereto, plaintiff had received no notice whatsoever that

the value of its inventory would be raised from $450,000 to $1,015,000. The just valuation of plaintiff's inventory as of April, 1967, is $338,000.

The deposition of Charles Carlyle, deputy tax assessor, who increased the valuation from $338,000 to $1,015,000, states that he had no particular training in the valuation of jewelry; that he visited the plaintiff on three different occasions; that he did not ask to see nor did he see the books and records or the contents of the safe, nor did he attempt to value the jewelry that he did see. Carlyle reported — "After calling on Mr. Richter three times, he conceded only to his 1965 assessment of $450,000. He specifically requested that I do *not* contact his accountant, Mr. Nefus, of the firm of Morgan, Altemus & Barrs. (Exhibit D, back, attached to complaint.) (While not material, compare Mr. Richter's explanation, supra.)

In explaining the basis for raising Richter's valuation from $338,000 to $1,015,000, while referring to elements such as block-ads for fancy pieces of jewelry in local newspapers, Richter's sales trips around the country, a tapestry with a $35,000 price tag, and an alleged statement to a county co-worker by Richter's office manager to the effect that Richter never had less than $3,000,000 in its store, the substance of Carlyle's testimony is that the purpose of visiting Richter's store three times was to "draw Mr. Richter out," i.e., to pin him down to a figure that was acceptable to Richter. Carlyle reported that Richter agreed to his 1965 assessment of $450,000, and in his estimation any time a taxpayer is happy with his assessment, he is under-assessed. Carlyle considered that he could compensate for this by more than doubling the previous assessment and put down the figure of $1,015,000.

In his deposition, William Scarola, head of the personal property division of the tax assessor's office, stated that the first valuation on Richter's inventory was $338,000; that when he questioned Carlyle as to the basis for the increase to $1,015,000, Carlyle stated that he did not see any books or records and that is what "he felt the inventory was." Scarola stated that the most important factor in determining the valuation of the inventory is the federal income tax return although neither he nor Carlyle saw Richter's federal tax return until after suit was filed. In ratifying the million dollar valuation, Scarola relied solely on Carlyle's recheck.

At the deposition of Dan Gill, senior vice-president of City National Bank of Miami, a financial statement of Richter's for 1966 was introduced into evidence reflecting a merchandise inventory of $715,419.14.

The deposition of Daniel Richter was substantially the same as his affidavit. Richter stated that the $715,419.14 represented the actual cost of the merchandise and was not what it was worth or its full cash value.

It is uncontradicted that plaintiff was never sent any notice that the valuation of its tangible personal property had been increased to $1,015,000.

Without resolving any issues on which there may be even the slightest conflict in the testimony, such as whether Richter filed a 1967 tangible personal property tax return, how the $450,000 figure came about or any determination of actual fraud, etc., the court finds that there is no issue of material facts as to the following and concludes that —

a. The 1967 tangible personal property tax assessment made by the defendant Dade County Tax Asseessor of the property of the plaintiff, Richter's Jewelry Company, based on the valuation of $1,015,000, is invalid and illegal. No semblance of an attempt to reach the fair market value of the tangible personal property was made by this deputy tax assessor, and no reliable sources of information were consulted in the valuation process. The valuation of $1,015,000 and the assessment based upon it are found to be entirely arbitrary, capricious, excessive and a denial of due process of law.

b. It is also clear from the undisputed facts before the court that the assessment of $1,015,000 is unjust and excessive. Plaintiff's officers say under oath that the just valuation of the property is $338,000. No evidence has been presented to the court by affidavit or otherwise that the valuation of $338,000 is incorrect or that the valuation of $1,015,000 is correct. Even the merchandise inventory figure found in plaintiff's financial statement and relied upon in argument by the defendants is considerably less that $1,015,000; there is nothing to indicate that $715,419.13 is the fair market value or just valuation of plaintiff's property.

Based upon the foregoing, it is hereby ordered and adjudged —

(1) That the motion to dismiss of defendant Dade County and the other defendants is denied. Graham v. City of West Tampa, 71 Fla. 605, 71 So. 926 (1916); West Va. Hotel Corporation v. Foster Company, 101 Fla. 1147, 132 So. 842 (1931); Stiles v. Brown (Fla. App. 1st 1965), 177 So.2d 672, affirmed 182 So. 2d 612.

(2) That the motion for summary judgment of defendant Dade County and the other defendants is denied;

(3) That plaintiff's motion for summary judgment is granted with respect to that portion of its complaint dealing with its tangible personal property tax assessment for the year 1967;

(4) That the Dade County Tax Asseessor shall forthwith re-evaluate plaintiff's tangible personal property tax liability for the year 1967;

(5) That this court retains jurisdiction to review the findings of the tax assessor after such re-evaluation is made.